**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

<table>
<tr><td>

**PENSION BENEFIT GUARANTY CORPORATION,**

*Plaintiff,*

v.

**STEPHEN J. FAY, KAREN FAY, JAMES S. FAY, JR., MONIQUE FAY, and THE ESTATE OF MARGORY ANN FAY,**

*Defendants.*

</td><td>

**Case No. 2:24-cv-01861-JDW**

</td></tr>
</table>

## MEMORANDUM

Pension Benefit Guaranty Corporation ("PBGC") seeks a default judgment against Stephen J. Fay, Karen Fay, James S. Fay, Jr., Monique Fay, and the Estate of Margory Ann Fay (the "Estate") to recover losses suffered as a result of their violations of their fiduciary duties under ERISA. I will grant the motion and award PBGC the relief that it seeks.

## I.    BACKGROUND

### A.    Facts

Fay Construction and Fay Development are each corporations organized under the laws of Delaware and located in Media, Pennsylvania. Fay Development is a member of Fay Construction's controlled group. On January 1, 1985, Fay Construction established a pension plan (the "Pension Plan"), which, until its termination, was a single-employer

pension plan that Fay Construction administered. The pension plan termination program under Title IV of the Employee Retirement Income Security Act ("ERISA") covered the Pension Plan.

Stephen J. Fay is the President of Fay Construction and Fay Development, and James Fay, Jr. served as Treasurer. Each exercised discretionary authority over the management and administration of the Pension Plan, as well as the disposition of its assets. As employees of Fay Construction, both were participants in the Pension Plan. Each of their spouses, Karen Fay and Monique Fay, was not a participant in, and did not perform any services for, the Pension Plan, but each is entitled to a benefit under via a qualified joint and survivor annuity under 29 U.S.C. § 1055(a).

Following the death of her spouse James S. Fay, Sr., Margory Ann Fay owned 100% of the stock of Fay Construction and Fay Development. She exercised discretionary authority over the management and administration of the Pension Plan, as well as the disposition of its assets. As the surviving spouse of James S. Fay, Sr., she was entitled to a benefit under the Pension Plan via a qualified joint and survivor annuity under 29 U.S.C. § 1055(a). As an employee of Fay Construction, she was also entitled to her own separate benefit under the Pension Plan. Upon her death on February 14, 2022, Stephen J. Fay and James S. Fay, Jr. became co-executors of the Estate. As co-executors, they exercise discretionary authority over the Estate's powers and rights as sole shareholder of Fay Construction and Fay Development.

2

PBGC is a federal government agency that administers the pension insurance program established by ERISA. PBGC guarantees the payment of retirement benefits to members of pension plans that terminate while covered by ERISA. For pension plans under its coverage, PBGC has the power to initiate termination on pension plans that, among other things, lack sufficient assets to pay plan members their accrued benefits.

As of January 1, 2004, the Pension Plan's financial statements showed $1,535,524.15 in assets held in accounts at Wilmington Trust Company, Legg Mason Investments, and Quick & Reilly Financial Services Group, as well as in life insurance policies with AXA Insurance Company. After December 21, 2004, substantially all the Pension Plan's assets were transferred to one or more Merrill Lynch brokerage accounts held in Fay Development's name. Those assets were never returned to any of the Pension Plan's accounts, nor were the accounts otherwise replenished. Instead, those assets remain commingled in Fay Development's accounts.

On June 14, 2017, PBGC issued notice to Fay Construction that the Pension Plan should be terminated for lack of sufficient assets. That same day, it filed a civil action to terminate the Pension Plan, establish the termination date as June 14, 2017, and have PBGC appointed the statutory trustee of the Pension Plan. On June 14, 2021, PBGC and Fay Construction entered into a trusteeship agreement that terminated the Pension Plan, established the termination date as June 14, 2017, and appointed PBGC the statutory trustee of the Pension Plan. At the time of termination, the benefits payable to participants

and beneficiaries exceeded the Pension Plan's assets by $1,529,972.00. On June 17, 2021, PBGC and Fay Construction agreed to dismiss the termination action.

On June 6, 2022, PBGC entered into a settlement agreement (the "Settlement Agreement") with Stephen J. Fay, James S. Fay, Jr., Fay Development, and Fay Construction. Under Section 5(a) of the Settlement Agreement, Stephen Fay and James Fay, Jr., in satisfaction of their liability for fiduciary breach, each agreed to pay the Pension Plan through a reduction in their monthly pension benefits, respectively representing the actuarial equivalent of $533,000.00 and $412,000.00. Section 5(b) required Stephen Fay and James Fay, Jr. to execute benefit waiver elections for a reduction of their benefits in the amounts specified in Section 5(a) and to have their spouses consent to their respective benefit waiver elections in writing.

Under Section 6 of the Settlement Agreement, PBGC agreed to forbear from collecting from Stephen Fay and James Fay, Jr. if they complied with Sections 5(a) and (b). However, PBGC reserved the right to investigate and take further action against them if they failed to timely deliver on their obligations. To date, neither Stephen Fay nor James Fay, Jr. have executed their benefit waiver election or obtained their spousal consents. Those violations of the Settlement Agreement constitute an Event of Default as defined by the Settlement Agreement in Section 8(a). Accordingly, PBGC filed this civil action.

As a result of the Defendants' conduct, PBGC has incurred monetary damages. The failure to maintain sufficient assets for the Pension Plan resulted in an estimated loss of

$1,535,524.15. Stephen Fay and James Fay, Jr. have frustrated PBGC's efforts to resolve this issue by refusing to comply with the terms of the Settlement Agreement. Accordingly, PBGC has incurred fees and costs by bringing this civil action.

### B.    Procedural History

PBGC filed this case on May 1, 2024. On May 23, 2024, this case was reassigned from the late District Judge Gene E.K. Pratter to this Court. On May 31, 2024, PBGC filed a certificate of service certifying that it served the Order reassigning the case by Federal Express and first-class mail to Stephen Fay, Karen Fay, and the Estate. On June 4, 2024, the Pennsylvania State Constable filed proof of service for Stephen Fay, Karen Fay, and the Estate. PBGC requested an entry of default against Stephen Fay, Karen Fay, and the Estate on June 11, 2024, which the Clerk entered on June 13, 2024. On June 14, 2024, PBGC filed a certificate of service certifying that it served the Entry Of Default by Federal Express and first-class mail on Stephen J. Fay, Karen Fay, and the Estate.

On June 6, 2024, the Pennsylvania State Constable filed proof of service for Monique Fay. On June 7, 2024, PBGC filed a certificate of service certifying that it served the Order reassigning the case to me by Federal Express and first-class mail on Defendant Monique Fay. On June 25, 2024, PBGC requested an entry of default against Monique Fay, which the Clerk entered on June 27, 2024. On June 28, 2024, PBGC filed a certificate of service certifying that it served the Entry Of Default by Federal Express and first-class mail on Monique Fay.

On June 27, 2024, the Pennsylvania State Constable filed proof of service for James Fay, Jr. On July 16, 2024, PBGC requested an entry of default against James Fay, Jr., which the Clerk entered on July 17, 2024.

On July 17, 2024, I issued an Order notifying PBGC that it shall move for default judgment against the Defendants on or before July 24, 2024. On July 24, 2024, PBGC filed this Motion for Default Judgment, which I now resolve.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) authorizes a district court to enter a default judgment against a properly served defendant who fails to appear. *See* FED. R. CIV. P. 55(b)(2). To obtain a default judgment pursuant to Rule 55(b)(2), a litigant must first obtain an entry of default from the Clerk of Court pursuant to Rule 55(a). Then, the district court has discretion as to whether to grant a motion for a default judgment. *See Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). Before entering default judgment, a court must consider "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Id.* (citation omitted). A court need not find all three factors satisfied to award a default judgment.

The Third Circuit also requires consideration of the *Poulis* factors "when a district court enters a default judgment pursuant to Rule 55(b) as a sanction for failure to plead or otherwise defend." *Knoll v. City of Allentown*, 707 F.3d 406, 409 (3d Cir. 2013) (internal

citation omitted). Thus, in addition to the *Chamberlain* factors, a court must also consider:

"(1) the extent of the party's personal responsibility; (2) the prejudice to the adversary

caused by the failure to meet scheduling orders and respond to discovery; (3) a history of

dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith;

(5) the effectiveness of sanctions other than dismissal, which entails an analysis of

alternative sanctions; and (6) the meritoriousness of the claim or defense. *Id.* at 409 n.2

(quoting *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984)).

In deciding a motion for default judgment, "the factual allegations in a complaint,

other than those as to damages, are treated as conceded by the defendant." *DIRECTV,*

*Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir. 2005). However, "it remains for the court to consider

whether the unchallenged facts constitute a legitimate cause of action, since a party in

default does not admit conclusions of law." *Butler v. Experian Info. Sols.*, No. CV 14-07346,

2016 WL 4699702, at *2 (E.D. Pa. Sept. 7, 2016) (*quoting* 10A Charles Alan Wright et al.,

Federal Practice and Procedure § 2688.1 (4th ed.)).

## III.    DISCUSSION

### A.    *Chamberlain* **And** *Poulis* **Factors**

Consideration of the *Chamberlain* and *Poulis* factors demonstrates that default

judgment is warranted. *First*, PBGC would suffer substantial prejudice if I were to deny it

a default. It has no other recourse to enforce both its statutory rights and its rights under

the Settlement Agreement. *Second*, Defendants have not appeared or otherwise made

7

any representations, so I have no basis to conclude that they have a litigable defense. It does appear that they have defaulted under the Settlement Agreement. *Third*, the Clerk entered default in this case after the Defendants failed to plead, answer, or otherwise respond to the suit. The Defendants have provided no excuse for the delay, even though they were served with the Complaint by the Pennsylvania State Constable, demonstrating they are aware of the lawsuit. *Fourth*, this conduct is consistent with the way that Defendants have acted. The Defendants who ran Fay Development and Fay Construction ignored those companies' pension obligations. They ignored obligations under the Settlement Agreement. Now, they've ignored obligations to respond to court filings, too. I therefore infer that their conduct is willful. Thus, the great weight of relevant factors warrants entry of a default judgment.

### B.    Merits Of Claims

#### 1.    Duty of loyalty under 29 U.S.C. § 1104(a)(1)(A)

PBGC asserts a claim against Stephen Fay, James Fay, Jr., and the Estate (collectively the "Fay Fiduciaries") for violating their duty of loyalty under 29 U.S.C. § 1104(a)(1)(A). A person is a fiduciary with respect to a pension plan to the extent that he (a) exercises discretionary authority or discretionary control with respect to the management of the plan or the disposition of its assets; (b) renders investment advice with respect to the plan for direct or indirect compensation or has authority or responsibility to do so; or (c) has discretionary authority or discretionary responsibility in the administration of the plan.

*See* 29 U.S.C. § 1002(21). Section 1104(a)(1)(A) requires fiduciaries to discharge their duties with respect to a pension plan "solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan... ." 29 U.S.C. § 1104(a)(1)(A). Fiduciaries who breach their duties to a plan under Section 1104 "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary." 29 U.S.C. § 1109(a).

PBGC has pled facts to establish that the Fay Fiduciaries violated their duty of loyalty under 29 U.S.C. § 1104(a)(1)(A). The Fay Fiduciaries were fiduciaries with respect to the Pension Plan at least since James Fay Sr. died on June 6, 2006. Each of the Fay Fiduciaries exercised discretionary authority over the management and administration of the Pension Plan, as well as the disposition of its assets. The Fay Fiduciaries each violated that duty by failing to operate the Pension Plan solely in the interest of the participants and beneficiaries, and exclusively for the purpose of providing those benefits. The Fay Fiduciaries either permitted the transfer of the Pension Plan's assets to the Fay Development brokerage accounts at Merrill Lynch or allowed the Pension Plan's assets to

remain commingled in the Fay Development brokerage accounts without returning or replenishing them.

### 2.     Duty of prudence under 29 U.S.C. § 1104(a)(1)(B)

PBGC asserts a claim against the Fay Fiduciaries for violating their duty of prudence under 29 U.S.C. § 1104(a)(1)(B). Section 1104(a)(1)(B) requires fiduciaries to discharge their duties with respect to a pension plan "solely in the interest of the participants and beneficiaries ... with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. . . ." 29 U.S.C. § 1104(a)(1)(B). PBGC has pled facts to establish that the Fay Fiduciaries violated their duty of prudence. The Fay Fiduciaries are fiduciaries with respect to the Pension Plan under 29 U.S.C. § 1002(21). They failed their duty by permitting the transfer of assets from the Pension Plan to the Fay Development brokerage accounts at Merrill Lynch and by permitting them to remain there. Furthermore, the Fay Fiduciaries paused the payment of benefits to participants from the Fay Development accounts, which resulted in at least one eligible participant experiencing an interruption in benefits paid.

### 3.     Failure to diversify investments under 29 U.S.C. § 1104(a)(1)(C)

PBGC asserts a claim against the Fay Fiduciaries for failing to properly diversify the Pension Plan's assets under 29 U.S.C. § 1104(a)(1)(C). Section 1104(a)(1)(C) requires fiduciaries to discharge their duties with respect to a pension plan "solely in the interest

10

of the participants and beneficiaries ... by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so ... ." 29 U.S.C. § 1104(a)(1)(C). PBGC has pled facts to establish that the Fay Fiduciaries failed to diversify the Pension Plan's assets. They permitted the transfer of substantially all of the Pension Plan's assets to the Fay Development brokerage accounts and then permitted them to remain there. With nothing left in the Pension Plan, there was no way to diversify the assets. It also was not prudent to keep the funds commingled in the Fay Development accounts.

### 4. Co-fiduciary liability under 29 U.S.C. § 1105(a)(2)

Under 29 U.S.C. § 1105(a), "a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances: (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach." 29 U.S.C. § 1105.

PBGC has demonstrated that each of the Fay Fiduciaries is jointly and severally liable for the breaches of the other. Each fiduciary had ample time and opportunity to

transfer the funds out of the Fay Development accounts back to the Pension Plan, where they rightfully belonged. None of them did. By failing to restore the funds to the Pension Plan, each of the Fay Fiduciaries enabled fellow fiduciaries to breach the duty of loyalty.

### 5.    Prohibited transactions under 29 U.S.C. § 1106(a)

"A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect ... transfer to, or use by or for the benefit of a party in interest, of any assets of the plan. . . ." 29 U.S.C. § 1106(a)(1)(D). As to an employee benefit plan, the term "party in interest" means, *inter alia*, any fiduciary, counsel, or employee of such a plan. *See* 29 U.S.C. § 1002(14)(A). The term can also apply to a corporation when "50 percent or more of-- (i) the combined voting power of all classes of stock entitled to vote or the total value of shares of all classes of stock of such corporation, (ii) the capital interest or profits interest of such partnership, or (iii) the beneficial interest of such trust or estate, is owned directly or indirectly, or held by persons described in subparagraph (A). . . ." 29 U.S.C. § 1002(14)(G).

PBGC has demonstrated that one or more prohibited transactions occurred between the Pension Plan and Fay Development. Fay Development was a party in interest under Section 1002(14)(G), because at all relevant times either James Fay, Sr. or Margory Ann Fay owned 100% of its stock, and each of them was also a party in interest under Section 1002(14)(A). The Pension Plan's assets were transferred to, and remained in, the Fay Development accounts for the benefit of Fay Development, which was a party in

interest. As such, the Fay Fiduciaries permitted at least one prohibited transaction between the Pension Plan and a party in interest.

### 6.    Prohibited transactions under 29 U.S.C. § 1106(b)

"A fiduciary with respect to a plan shall not ... in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries ... ." 29 U.S.C. § 1106(b)(2). Each of the Fay Fiduciaries either permitted the Pension Plan to transfer funds to the Fay Development accounts, or failed to return Pension Plan funds to accounts in the Pension Plan's name. In doing so, each of them acted on behalf of Fay Development in one or more transactions with the Pension Plan. In those transactions, Fay Development was a party whose interest were adverse to the interests of the Pension Plan. The Fay Fiduciaries were fiduciaries under 29 U.S.C. § 1002(21), and as such, engaged in a transaction prohibited under 29 U.S.C. § 1106(b)(2).

### 7.    Amount of liability

Each of these violations subjects the Fay Fiduciaries to personal liability to the Pension Plan for an estimated loss of at least $1,535,524.15 plus interest and opportunity costs. In addition, in "any action brought under this subchapter, whether to collect premiums, penalties, and interest under section 1307 of this title or for any other purpose, the court may award to the corporation all or a portion of the costs of litigation incurred by the corporation in connection with such action." 29 U.S.C. § 1303(e)(5). Given the Fay

Fiduciaries' decisions to ignore obligations time and again, I conclude that an award of attorneys' fees and costs is appropriate.

## IV.    CONCLUSION

Defendants have ignored their obligations time and again. PBGC has pled facts that entitle it to declaratory relief, injunctive relief, and award of litigation costs, which I will enter. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*

**JOSHUA D. WOLSON, J.**

November 5, 2024